UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED
2016 FEB 11 PM 5:28
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

CONTINENTAL CASUALTY COMPANY,
et al.,

    Plaintiffs,

v.

Case No: 8:16-cv-322-T-17TGW

JOHN W. HARDIN, et al.,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR (A) LEAVE TO FILE VERIFIED COMPLAINT UNDER SEAL, (B) TEMPORARY RESTRAINING ORDER, AND (C) PRE-JUDGMENT WRIT OF ATTACHMENT

This cause came before the Court pursuant to the *Plaintiffs' Ex-Parte Motion and Memorandum of Law for: (a) Leave to File a Verified Complaint under Seal; (b) a Temporary Restraining Order and Preliminary Injunction; and (c) Writ of Attachment* (the "**Motion**") filed by the Plaintiffs, Continental Casualty Company, et al. (the "**Plaintiffs**"). Through the Motion, the Plaintiffs request that the Court enter a temporary restraining order and preliminary injunction (i) requiring the Defendants, John W. Hardin, et al. (the "**Defendants**") to preserve certain "Information" (defined in the Motion); (ii) ordering the immediate cloning of all Defendants' computers and servers; (iii) freezing the Defendants' "Assets" (defined in the Motion); and (iv) ordering an accounting of the "Assets" to maintain the *status quo* during this litigation. The Plaintiffs further request that the Court allow them to file their *Verified Complaint* (the "**Verified Complaint**") against the Defendants under seal, and issue a writ of attachment against all of the "Assets." For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.



I.  **Background**

The Plaintiffs commenced this action by filing the Motion on February 10, 2016. The parties have been engaged in litigation since at least October 10, 2006, when certain of the Plaintiffs filed a *Complaint* (2036 Doc. No. 1) (the "**2036 Complaint**") against Staffing Concepts, Inc. and various other Defendants (the "**2036 Defendants**") in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 8:90-cv-2036-AEP (the "**2036 Case**").[1] Through the 2036 Case, the Plaintiffs alleged that the 2036 Defendants failed to reimburse them for various deductibles owed under claim service agreements between the Plaintiffs and the 2036 Defendants. (2036 Case Doc. No. 160, at 2). On September 18, 2009, the Hon. Ronald A. Guzman entered a *Memorandum Opinion and Order* (2036 Case Doc. No. 160) transferring the case to the Middle District of Florida. On October 7, 2009, the case was assigned to Hon. Richard A. Lazzara and Magistrate Judge Anthony E. Porcelli. (2036 Case Doc. No. 163). On October 8, 2009, Judge Lazzara entered an order recusing himself, and the case was assigned to Hon. Steven D. Merryday, Chief Judge. (2036 Case Doc. No. 164). The parties ultimately consented to the jurisdiction of Magistrate Porcelli to conduct all proceedings in the "arbitrability phase" of the 2036 Case. (2036 Case Doc. No. 332).

On August 28, 2014, the Clerk of Court entered judgment in favor of Plaintiff, CNA ClaimPlus, Inc. and against Defendant, Staffing Concepts International, Inc. in the combined amount of $2,343,054.70. On May 11, 2015, the Clerk of Court entered judgment in favor of CNA ClaimPlus, Inc. and against Staffing Concepts International, Inc. in the combined amount of $1,501,468.19. (2036 Case Doc. No. 531). Finally, on

---

[1] All references to documents filed in the 2036 Case shall be in the following format: 2036 Case Doc. No. ___.

November 10, 2015, Magistrate Porcelli entered an *Order of Judgment* (2036 Case Doc. No. 603) (the "**November Order**") ordering the entry of final judgment in favor of the Plaintiffs in the 2036 Case and against the 2036 Defendants as follows: (a) $1,243,274.31 to Plaintiff, Continental Casualty Company; (b) $3,638,488.29 to Plaintiff, American Casualty Company of Reading, P.A.; and (c) $9,273,802.39 to Plaintiff, National Fire Insurance Company of Hartford, all of which amounts were to be owed jointly and severally by all of the 2036 Defendants. In addition, Magistrate Porcelli ordered judgment to be entered in favor of Plaintiff, National Fire Insurance Company of Hartford in the amount of $12,268.70, to be owed jointly and severally by Defendants, Staffing Concepts National, Inc. and Staffing Concepts International, Inc. The November Order further states that the amounts awarded are exclusive of interest, attorneys' fees, and costs that may be awarded to the Plaintiffs.

According to the Plaintiffs, post-judgment discovery in the 2036 Case has revealed that the Defendants, John W. Hardin and Henry C. Hardin, III, have orchestrated a complex scheme to defraud the Plaintiffs and other creditors. Specifically, the Plaintiffs allege that the 2036 Defendants falsely represented that they were "winding down" their operations and that they have no assets from which to satisfy the judgments entered in the 2036 Case. Contrary to those representations, however, the Plaintiffs allege that Defendants, John W. Hardin and Henry C. Hardin, III, have created new generations of the companies named as Defendants in the 2036 Case. According to the Plaintiffs, the Hardins have caused the 2036 Defendants to transfer their assets to the new generations of entities in order to hinder creditors' collection efforts. As a result of their efforts, the Plaintiffs allege the Defendants have improperly transferred "tens of millions" of dollars to

3

"offshore accounts safely out of the reach" of creditors. The Plaintiffs allege that many of these transfers took place during the 2036 Case, and in some instances, after entry of the judgments in the 2036 Case. The Plaintiffs further allege that the 2036 Defendants have committed discovery abuses in the 2036 Case, which have resulted in the possible loss of approximately eight banker's boxes of discovery materials, in addition to other incomplete and insufficient responses to the Plaintiffs' discovery requests.

As a result of the aforementioned issues, the Plaintiffs commenced this action seeking to recover allegedly fraudulent transfers by the 2036 Defendants to other related individuals and entities named as Defendants in this action, and to impose liability on the Defendants under theories of: (i) successor liability, (ii) conspiracy, (iii) aiding and abetting, and (iv) negligence. To ensure that the Defendants do not continue to dissipate their assets and/or obfuscate discovery, the Plaintiffs filed the Motion requesting entry of a temporary restraining order and preliminary injunction preventing the Defendants from transferring assets and destroying relevant evidence. The Plaintiffs also request that the Court issue pre and post-judgment writs of attachment against the Defendants' assets. Finally, the Plaintiffs request authority to file their Verified Complaint under seal to protect the confidentiality of information produced in the 2036 Case.

## II. Legal Analysis

The Plaintiffs request three separate forms of relief: (1) authorization to file the Amended Complaint under seal; (2) a temporary restraining order and preliminary injunction (a) prohibiting the Defendants' from disposing of their assets, and (b) requiring the Defendants to preserve potentially relevant evidence; and (3) issuance of a writ of attachment against the Defendants' assets. The Court will address these issues in turn.

## A. Authorization to File the Verified Complaint under Seal

The Court has authority to permit a party to file papers or other matters under seal upon the filing of a motion pursuant to Local Rule 1.09. Documents may be filed under seal upon a finding extraordinary circumstances. *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). Here, the Plaintiffs request authority to file the Verified Complaint under seal to protect against the disclosure of information designated as confidential pursuant to a separate confidentiality and protective order entered in the 2036 Case. (2036 Case Doc. No. 590). In particular, the Plaintiffs request that the documents designated as confidential in the 2036 Case be sealed until one year after the conclusion of litigation. Upon review, the Court will permit the Verified Complaint to be filed under seal, subject to the following condition: Upon service of all Defendants in this case, the Plaintiffs shall file a properly-redacted version of the Verified Complaint in the public record. The original Verified Complaint will remain under seal, however the case will thereafter be unsealed, and all subsequent filings in the case must be made in the public record, absent prior Court approval.

## B. Motion for Temporary Restraining Order and Preliminary Injunction

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). "Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed

in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). "The order expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time, the court for good cause, extends it for a like period or the adverse party consents to a longer extension." *Id.*

"If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Fed. R. Civ. P. 65(b)(3). "At the hearing, the party who obtained the order must proceed with the motion," or the Court must dissolve the order. *Id.* "On 2 days' notice to the party who obtained the order without notice . . . the adverse party may appear and move to dissolve or modify the order." Fed. R. Civ. P. 65(b)(4). "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

"Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "The order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described" above. Fed. R. Civ. P. 65(d)(2).

To determine whether entry of a temporary restraining order is appropriate, the Court must consider: (i) whether there is a substantial likelihood that the Plaintiffs will

prevail on the merits; (ii) the risk of irreparable harm to the Plaintiffs if the Motion is not granted; (iii) whether the threatened injury to the Plaintiffs outweighs the potential harm to the Defendants; and (iv) whether the issuance of the temporary restraining order would be adverse to the public interest. See *Mattive v. Healthsource of Savannah, Inc.*, 893 F.Supp. 1559, 1563 (S.D. Ga. 1995). The Court addresses each issue in turn.

1. *Substantial Likelihood of Success on the Merits*

The Plaintiffs argue that the Defendants' misconduct, as detailed in the Motion and Verified Complaint, establish a substantial likelihood of success on the merits of their claims. Without purporting to adjudicate the legal sufficiency of the Verified Complaint, the essence of the Plaintiffs' allegations, taken as true, demonstrate a substantial likelihood of success on the merits. Stated differently, the Plaintiffs have alleged the existence of a fraudulent scheme to hinder and defraud creditors, which if proven to be true, would be actionable under the theories of liability set forth in the Verified Complaint. As a result, the Court agrees with the Plaintiffs that the allegations in the Verified Complaint establish a substantial likelihood of success on the merits.

2. *Risk of Irreparable Harm to the Plaintiffs*

The critical issue in determining whether a plaintiff faces a risk of irreparable harm is whether, in the absence of injunctive relief, the plaintiff has an adequate remedy at law. *Collins & Co. Gen. Contractors, Inc. v. Claytor*, 476 F.Supp. 407, 410 (N.D. Ga. 1979). Notably, where a party can be adequately compensated through an award of money damages, injunctive relief is typically denied. See *SME Racks, Inc. v. Sistemas Mercanios Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007). Here, however, the Plaintiffs argue that the Defendants' scheme to thwart collection would render any award of money damages in this case a nullity. Faced with similar allegations, courts within this

circuit have entered temporary restraining orders in the form of asset freezes where there is "good reason to believe Defendants will hide or transfer . . . assets beyond the jurisdiction of this Court unless those assets are restrained." *Abercrombie & Fitch Trading Co. v. 007fashion.com*, 2013 WL 654911, at *1 (S.D. Fla. Feb. 21, 2013). Given the sophistication and scope of the alleged scheme in this case, the Court agrees that the Plaintiffs face a risk of irreparable harm absent entry of a restraining order.

### 3. Threat of Injury to Plaintiffs versus Potential Harm to Defendants

The threat of injury to the Plaintiffs is that they will be unable to collect their judgments in the 2036 Case, and will be unable to prove their allegations in this case, due to the Defendants' alleged scheme to fraudulently transfers assets and destroy evidence. In contrast, the Court anticipates the Defendants will argue that they are engaged in legitimate business activities, and that the entry of an order freezing their assets will result in irreparable harm to their interests, including the loss of their business. This is a difficult situation to balance, particularly in the context of an *ex parte* motion for injunctive relief. At best, the issuance of the injunction will safeguard valuable assets to ensure the payment of an outstanding obligation owed to the Plaintiffs. At worst, it could result in the loss of any remaining assets to the detriment of both parties.

The best middle ground, in the view of the Court, is to enjoin the Defendants from engaging in any transfers *outside the ordinary course of business* until the Court can conduct a hearing on the motion for preliminary injunction. To prevent the Defendants from suffering unnecessary harm, the Defendants are authorized to make ordinary course transfers to their contractual counterparties, customers, and employees in an amount not to exceed $250,000.00 per transfer, or $1,000,000.00 in the aggregate. To the extent it may be necessary for the Defendants to make inter-company transfers to satisfy

legitimate obligations to third-parties, the Defendants may engage in such transfers; subject to the monetary limitations stated above. To be clear, however, the Defendants are prohibited from engaging in any transfers to insiders or related entities in order to facilitate any corporate reorganization or restructuring during the pendency of this order.

As for the Plaintiffs' requests (i) that the Defendants preserve all potentially relevant evidence, (ii) for an immediate cloning of the Defendants' electronic records for deposit into the registry of the Court, and (iii) for an accounting of the Defendants' assets, the Court finds it necessary to address each individual issue in turn. As to the request that the Defendants preserve all potentially relevant evidence, the Court views this as an obligation of any party to litigation and, as a result, does not perceive any risk of prejudice to the Defendants by granting the requested injunction. However, as to the request for an immediate "cloning" of the Defendants' electronic records, the Court sees a number of potential issues. First, the Defendants' electronic records are likely voluminous and undoubtedly contain significant amounts of irrelevant information. Second, much of the "cloned" information, such as employee records and trade secrets, may be of a highly sensitive nature. Third, the process of "cloning" all of the Defendants' electronic records is likely to be time consuming and expensive. In light of these issues, the Court views the forced acquisition of all of the Defendants' electronic information as posing a high risk of harm to the Defendants. The Plaintiffs, on the other hand, should not encounter any prejudice if the Defendants preserve and safeguard any electronic information and other evidence relevant to the parties' claims. Finally, as to the Plaintiffs' request for an accounting, the Court believes that this issue is better addressed in the context of the motion for preliminary injunction. Specifically, since the Court is already enjoining the

Defendants from destroying any potentially relevant evidence, and from transferring assets outside of the ordinary course of business, any benefit provided by an accounting is marginal compared to the burdens that would be imposed on the Defendants.

### 4. Public Interest

As to the public's interest, the Court believes that the entry of a temporary restraining order requiring the Defendants to preserve all potentially relevant evidence, and prohibiting the Defendants from engaging in transfers outside of the ordinary course of business, adequately safeguards the public's interest. In particular, the public's interest is protected by safeguarding any evidence and assets that may be relevant to and/or available to pay the Defendants' obligations, while at the same time enabling the Defendants to continue engaging in legitimate operations.

### C.   Request for Writ of Attachment

Federal Rule of Civil Procedure 64(a) states that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). In the post-judgment context, Federal Rule of Civil Procedure 69(a)(1) states that "[a] money judgment is enforced by a writ of execution unless the court directs otherwise," and that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69*a)(1). Here, the Plaintiffs request entry of both pre and post-judgment writs of attachment under Rules 64 and 69. Since this case has not yet proceeded to judgment, the remedies set forth in Rule 69 are unavailable. To the extent the Plaintiffs wish to pursue any post-judgment remedies set forth in Rule 69, they should direct their requests to Magistrate Porcelli in the 2036 Case.

As to the Plaintiffs' request for a pre-judgment writ of attachment, Section 76.01 of the Florida Statutes provides that "[a]ny creditor may have an attachment at law against the goods and chattels, lands, and tenements of his or her debtor under the circumstances and in the manner hereinafter provided." § 76.01, Fla. Stat. (2015). In the pre-judgment context, a creditor is entitled to an attachment "when the debtor: (1) is actually removing the property out of the state; (2) is fraudulently disposing of the property to avoid the payment of his or her debts; and (3) is fraudulently secreting the property to avoid payment of his or her debts." § 76.05, Fla. Stat. (2015). Importantly, "[n]o attachment shall issue until the person applying for it . . . makes a bond with surety to be approved by the clerk payable to defendant in at least double the debt demanded conditioned to pay all costs and damages which defendant sustains in consequence of plaintiff's improperly suing on the attachment." § 76.12, Fla. Stat. (2015).

Here, the Plaintiffs argue that the Defendants have fraudulently disposed of at least $41,000,000.00 to avoid having to pay the obligations owed to the Plaintiffs. As a result, the Plaintiffs contend that this "is a perfect example of when a writ of attachment . . . should issue." The problem with the Plaintiffs' argument is that they advise the Court they should only be required to "post a nominal bond as security for the . . . Writ of Attachment." (Motion, at 24). Given the clear language of Section 76.12 of the Florida Statutes, which requires posting of a bond "in at least double the debt demanded," the Plaintiffs' request for a pre-judgment writ of attachment will be denied without prejudice.

III.   **Conclusion**

Accordingly, it is

**ORDERED** that the Motion is **GRANTED IN PART AND DENIED IN PART**. The Plaintiffs may file the Verified Complaint under seal. Upon service of all Defendants

referenced in the Verified Complaint, the Plaintiffs are directed to file a redacted copy of the Verified Complaint in this case, at which time the case shall be unsealed.

It is **FURTHER ORDERED** that the Defendants are enjoined from transferring assets outside of the ordinary course of business during the pendency of this order. Specifically, while this order is in effect, the Defendants are authorized to make ordinary course transfers to their contractual counterparties, customers, and employees in an amount not to exceed $250,000.00 per transfer, or $1,000,000.00 in the aggregate. To the extent it may be necessary for the Defendants to make inter-company transfers to satisfy legitimate obligations to third-parties, the Defendants may engage in such transfers; subject to the monetary limitations set forth herein. However, the Defendants are otherwise prohibited from engaging in any transfers with insiders or related entities; particularly insofar as any transactions relate to corporate reorganizations or restructurings.

It is **FURTHER ORDERED** that the Defendants shall preserve all electronically stored information and other evidence that is relevant to the claims and defenses being asserted in this case. However, the Plaintiffs' requests for an order requiring the immediate cloning of the Defendants' electronic records and for an accounting are **DENIED WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that the Plaintiffs' request for a writ of attachment is **DENIED WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that this order shall become effective upon the Plaintiffs' posting of a bond in the amount of $100,000.00, and shall stay in effect for a period of fourteen (14) days from the payment of such bond into the registry of the Court.

It is **FURTHER ORDERED** that the Court shall conduct a hearing on the Motion on Wednesday, February 24, 2016 at 1:30 p.m. in Courtroom 14A, Sam M. Gibbons Courthouse, 801 North Florida Ave, Tampa, Florida 33602.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida at 5:15 p.m. on this 11th day of February, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record