UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONTINENTAL CASUALTY CO., :
*ET AL.*,                        :
                                 :
            Plaintiffs,          :
                                 :
v.                               : CASE NO. 8:16-CV-322-17TGW
                                 :
JOHN W. HARDIN, *ET AL.*,        :
                                 :
            Defendants.          :
_____

## REPORT AND RECOMMENDATION

The plaintiffs allege that the defendants, who are two individuals

and 32 companies, engaged in a fraudulent scheme to avoid paying the

plaintiffs' judgments against several defendants, which total over 30 million

dollars. John W. Hardin, and related defendants, filed a Motion to Dismiss the

Verified Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and

9(b), arguing that none of the five counts in the complaint states a cognizable

claim for relief (Doc. 63).   Defendant Henry C. Hardin, III, and other

defendants, join in that motion to dismiss (Doc. 75).   Additionally, the

insurance company defendants move to dismiss the claims against them based on lack of personal jurisdiction (Docs. 75-2, 88).

These motions, and other related filings, were referred to me for a report and recommendation (Docs. 104, 116). After considering the memoranda and oral argument on the motions, I recommend that the Motion to Dismiss Verified Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b) (Doc. 63) be granted as to the negligence claim, and denied in all other respects. Furthermore, I recommend that "Defendants' Notice of Joinder in John W. Hardin's Motion to Dismiss" (Doc. 75-1) be granted, but that Hardin Indemnity's "Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (Doc. 75-2) be denied.

Finally, I recommend that the "Motion to Strike the Affidavit of John W. Hardin, Accompanying Exhibits, and the Arguments Which Rely Upon Them, Included in the Defendants' Motion to Dismiss" (S-83), and Hardin Indemnity Ltd. II's "Notice of Joinder in Hardin Indemnity Ltd.'s Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (Doc. 88) be denied as moot.

I.

This matter began as an insurance premium dispute that was adjudicated in this court. See Case No. 09-CV-2036-AEP (the "2036 case"). The plaintiffs obtained multi-million dollar judgments against nine of the defendants in this action (the judgment debtors) (see Doc. 84, p. 3). Those judgments remain unsatisfied (Doc. 43-1, ¶6). The plaintiffs allege that "[p]ost judgment discovery exposed a wide-ranging scheme by the Individual Defendants to prevent satisfaction of these judgments and avoid creditors such as Plaintiffs" (Doc. 84, p. 3).

The plaintiffs claim that the defendants engaged in a "fraudulent scheme of transferring assets, fraudulent business transactions, commingling of funds, manipulation of financial records, and the formation and dissolution of the numerous companies owned and managed by...[individual defendants] John W. Hardin and...Henry C. Hardin, III, in an effort to defraud creditors" (id., p. 2) by rendering the judgment debtors insolvent and, concomitantly, the judgments uncollectible (Doc. 43-1, pp. 14-15).

In particular, the plaintiffs allege that one generation of "Staffing Concepts" companies, identified as the "Old SCI Entities," which are owned

-3-

by defendant Henry C. Hardin, III, and some of which are judgment debtors, fraudulently transferred assets to the "next generation" Staffing Concepts companies, identified as the "New SCI Entities," which are owned by John W. Hardin (id.). These companies are "professional employer organizations," which manage client payroll, human resources, and personnel responsibilities, including the maintenance of insurance for their clients (Doc. 43-1, ¶¶55, 56).

Additionally, the plaintiffs allege that assets were improperly diverted to Cayman Island insurance trust accounts by companies that were created by the individual defendants (Doc. 84, pp. 2-3). These companies, referred to as "captive insurers," are Hardin Indemnity, LLC; Hardin Indemnity, Ltd.; and Hardin Indemnity Ltd. II (see Doc. 43-1, p. 2).

The plaintiffs allege in this lawsuit that the defendants' conduct violates the Florida Uniform Fraudulent Transfer Act, Fla. Stat. 726.101 et seq. (FUFTA) (Doc. 43-1). Additionally, they assert claims of successor liability, conspiracy, aiding and abetting, and negligence, in connection with the alleged fraud (id.).

The defendants seek dismissal of the complaint in its entirety. Defendants John W. Hardin; Hardin Indemnity II Ltd.; People, Inc.; Leasing

Resources of America 2, Inc.; Leasing Resources of America 3, Inc.; Leasing

Resources of America 4, Inc.; Cohesive Networks, Inc.; and Cohesive

Networks 2, Inc. ("John Hardin defendants") and, by joinder, defendants Henry

C. Hardin, III; Hardin Indemnity LLC; Hardin Indemnity Ltd.; the Staffing

Concepts companies; and others ("Henry Hardin defendants") filed a Motion

to Dismiss Pursuant to Rules 12(b)(6) and (9)(b) (Docs. 63, 75).[1]  The

arguments in the Motion to Dismiss are summarized as follows (Doc. 63, pp.

3-4):

1.  Certain of the claims of fraudulent transfer are barred by the statute of limitations.

2.  The remaining claims in the Verified Complaint must be dismissed according to Fed. R. Civ. Pro. 9(b)....[T]he Verified Complaint does not allege the fraud with sufficient particularity.

3.  The remedy plaintiffs seek, joint and several liability against all 34 defendants...is not available under the Florida Uniform Transfer Act...nor under any theories of liability asserted in the Verified Complaint.

4.  The Verified Complaint does not set out facts to support the imposition of a duty of care on the Movants for the protection of plaintiffs....

5.  Critical allegations in the Verified Complaint are demonstrably false, particularly the claim

---

[1] The only defendant that has not sought dismissal is G&S Leasing Group VI, Inc.

that money being held in the Cayman Islands
was fraudulently transferred....

The plaintiffs oppose this motion arguing, among other things, that their claims are timely under the delayed discovery exception to the statute of limitations; the heightened pleading standard of Rule 9(b), F.R.Civ.P., does not apply to the fraudulent transfers claim; joint and several liability is available under FUFTA; and the complaint states a negligence claim (Doc. 84). The plaintiffs also filed a "Motion to Strike the Affidavit of John W. Hardin, Accompanying Exhibits, and the Arguments Which Rely Upon Them, Included in Defendants' Motion to Dismiss" (S-83), alleging that the defendants improperly attached extrinsic evidence to their motion to dismiss.

Thereafter, the Henry Hardin defendants filed a Notice of Joinder in John W. Hardin's Motion to Dismiss Pursuant to Rules 12(b)(6) and (9)(b) (Doc. 75-1). Additionally, defendant Hardin Indemnity filed a "Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (Doc. 75-2), and Hardin Indemnity Ltd. II filed a "Notice of Joinder" in that motion (Doc. 88).

These motions and related filings were referred to me for a report and recommendation (Docs. 104, 116). Oral argument was thereafter heard on these matters (Doc. 118).

-6-

II.

In evaluating a motion to dismiss, the court is to assume the veracity of well-plead factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Furthermore, the allegations in the complaint, and all reasonable inferences therefrom, are to be viewed in the light most favorable to the plaintiffs. Watts v. Florida International University, 495 F.3d 1289, 1295 (11th Cir. 2007); Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003).

The plaintiff's complaint is based upon an alleged scheme by the defendants to defraud the plaintiffs by transferring assets in violation of Florida's Uniform Fraudulent Transfer Act. To plead adequately a cause of action for violating FUFTA, the plaintiffs must allege: (1) they were creditors who were defrauded, (2) that the defendants intended to commit the fraud, and (3) that the fraud involved a conveyance of property that could have been applicable to the payment of the debt due. Dillon v. Axxsys Int'l, Inc., 185 Fed. Appx. 823, 828-29 (11th Cir. 2006).[2]

---

[2]Florida's Uniform Fraudulent Transfer Act provides that:(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) Without receiving a reasonably equivalent value

A. <u>Statute of Limitations</u>

The defendants argue first that "[c]laims of transfers that occurred more than four years before the filing of the Verified Complaint [on February 23, 2016] are time barred" (Doc. 63, p. 4). This contention is unavailing because it is premised upon the defendants' erroneous assumption that the fraud claims are governed by a four-year statute of limitations (<u>id</u>., p. 4 (<u>citing</u> §726.110(2)).

Fla. Stat. 726.110 governs extinguishment of causes of action under Florida's Uniform Fraudulent Transfers Act. It states:

> A cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless action is brought:
>
> (1) Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;

---

in exchange for the transfer or obligation, and the debtor: 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. Fla. Stat. 726.105.

(2) Under s. 726.105(1)(b) or s. 726.106(1), within 4 years after the transfer was made or the obligation was incurred; or

(3) Under s. 726.106(2), within 1 year after the transfer was made or the obligation was incurred.

The defendants inappropriately omit from their quotation of this statute a pertinent portion of subsection (1), which extends the limitations period for purported fraudulent conveyances occurring more than four years prior to the filing of the complaint when the claim is brought "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Fla. Stat. 726.110(1); see Kipnis v. Bayerische Hypo-Und Vereinsbank, AG, 784 F.3d 771, 779 (11th Cir. 2015) ("This 'delayed discovery' exception operates to postpone accrual of the limitations period 'until the plaintiff either knows or reasonably should know of an act giving rise to the cause of action.'").[3]

Furthermore, the plaintiffs contend that this delayed discovery exception applies in this case (Doc. 84, p. 6). Thus, the plaintiffs assert in the

---

[3]There is no reasonable explanation for failing to quote fully the applicable statute in these circumstances. The movants seemed to argue in their memorandum that the four-year statute of limitations in §726.110(2) was the only applicable provision because the plaintiffs are "present creditors" (Doc. 63, p. 4). However, §726.110(1)'s delayed discovery exception may also apply to present creditors. See id.,; §726.105(1).

complaint that the purported scheme was revealed during "post-judgment discovery" (Doc. 43-1, ¶8; see also id., ¶73 ("Defendants' scheme and wrongful conduct was revealed during CNA's post-judgment discovery efforts.")), and that they filed their complaint less than one year after that discovery (Doc. 84, pp. 4, 7). The plaintiffs elaborate that the documents which led to their discovery of purportedly fraudulent transfers were produced in the weeks and months following entry of a July 27, 2015, protective order in the underlying 2036 case (id., p. 8). The plaintiffs' allegation is properly accepted at this stage of the litigation. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (it is assumed on a motion to dismiss that factual allegations in the complaint are true).

Furthermore, the defendants, who did not even mention the delayed discovery exception, certainly did not show that it is inapplicable to this case, or that a particular transfer is barred from consideration under this exception. See Smith v. Duff and Phelps, Inc., 5 F.3d 488, 492 n. 9, 10 (11th Cir.1993). Significantly, the statute of limitations is an affirmative defense. Id.; Rule 8(c)(1), F.R.Civ.P. Therefore, it is "defendants' burden ... to demonstrate that...[the plaintiffs] should have learned of the alleged fraud" earlier "(and thus that the statute of limitations bars the suit)."

-10-

In sum, the defendants have not met their burden to show that the statute of limitations bars allegations of any fraudulent transaction. Accordingly, the argument that the FUFTA claim is time-barred is properly rejected.

Additionally, the defendants contend that, to the extent that counts two through five of the complaint involve events more than four years before the filing of the complaint, they are barred by the statute of limitations (Doc. 63, p. 4). This contention is also unavailing.

Pursuant to Fla. Stat. 95.031(2)(a), the delayed discovery exception applies to fraud claims, in general. See Kipnis v. Bayerische Hypo-Und Vereinsbank, supra, 784 F.3d at 779 (citing Fla. Stat. 95.031(2)(a) ("an action founded upon fraud accrues when the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.")).

Therefore, the delayed discovery exception applies to the plaintiffs' claims of successor liability, conspiracy, and aiding and abetting, all of which are based upon the alleged fraudulent transfers that the plaintiffs assert they could not have discovered earlier (see Doc. 43, p. 29) (successor liability count alleges that asset transfers were "sham transactions" that were

done "with actual intend to hinder, delay and defraud Plaintiffs"); (id., p. 30) (conspiracy claim alleges that each of the defendants "entered into an agreement to take such unlawful and overt acts to inflict the harms and injuries...").[4]

In sum, the defendants' argument that the claims are time-barred is appropriately rejected at this stage of the litigation. See Lindley v. City of Birmingham, Alabama, 515 Fed. Appx. 813, 815 (11th Cir. 2013) (A complaint should not be dismissed on a statute of limitations defense unless it appears beyond a reasonable doubt that a plaintiff can prove no set of facts that toll the statute).

## B. Rule 9(b), F.R.Civ.P.

The movants argue next that "The Verified Complaint, rooted in a claim of fraudulent transfers, must be dismissed" because the alleged fraud "is not pled 'with particularity' as required by Rule 9(b)" (Doc. 63, p. 5). The plaintiffs respond that the heightened pleading requirements of Rule 9(b),

---

[4]As discussed infra, pp. 25-28, the plaintiffs do not state a cognizable negligence claim for other reasons.

F.R.Civ.P., do not apply under the circumstances of this case (Doc. 84, pp. 8-10).  The plaintiffs' contention is persuasive.

Rule 9(b), F.R.Civ.P., requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  A claim lacking the specificity required by Fed.R.Civ.P. 9(b) is subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim.  See, e.g., Mitchell v. Beverly Enterprises, Inc., 248 Fed. Appx. 73  (11th Cir. 2007).

Rule 9(b)'s particularity requirement is discussed by the Eleventh Circuit in Ziemba v. Cascade Intern., Inc.,  256 F.3d 1194, 1202 (11th Cir. 2001) (citations and internal quotations omitted)):

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading. Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

The defendants contend that the plaintiffs have not satisfied Rule 9(b)'s heightened pleading standard.  However, the plaintiffs emphasize (Doc. 84, pp. 8-10) this court has held "Rule 9(b)'s heightened pleading requirement inapplicable" to FUFTA claims where, as here, the plaintiffs "are third party outsiders to the fraudulent transactions...with only second-hand knowledge of the fraudulent acts."  Wiand v. Buhl, No. 8:10-CV-75-T-17MAP, 2011 WL 6048829 at *4 (M.D. Fla. Nov. 3, 2011), report and recommendation adopted, 2011 WL 6048741 (M.D. Fla. Dec. 6, 2011); see also Wiand v. EFG Bank, No. 8:10-CV-241-T-17MAP, 2012 WL 750447 at *6 (M.D. Fla. Feb. 8, 2012), report and recommendation adopted, 2012 WL 760305 (M.D. Fla. Mar. 7, 2012) (finding Rule 9(b)'s heightened pleading requirement inapplicable to Wiand's FUFTA claims).

This court, furthermore, has exempted from the heightened pleading requirement other fraud claims "where the Plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing."  In re Checkers Sec. Litig., 858 F. Supp. 1168, 1178 (M.D. Fla. 1994); see also S.E.C. v. Physicians Guardian Unit Inv. Trust ex rel. Physicians Guardian, Inc., 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999); U.S. ex rel. Kozhukh v. Constellation Tech. Corp., 64 F. Supp. 2d 1239, 1243 (M.D. Fla.

1999) ("The court concludes an exception to rule 9(b) pleading requirement applies when the information is in the exclusive hands of the opposing party.").

The court in Gulf Coast Produce, Inc. v. American Growers, Inc., No. 07-80633-CIV, 2008 WL 660100 at *6 (S.D. Fla. Mar. 7, 2008), also held that Rule 9(b)'s heightened pleading standard does not apply to FUFTA claims, and aptly summarized the concerns that arise in this circumstance (footnote omitted):

> Unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction. Therefore, the plaintiff generally possesses little or no information about the alleged fraudulent transfer other than it occurred. The fraudulent act, the clandestine act of hiding money, is allegedly committed by a defendant and another, to the exclusion of the plaintiff. This is in stark contrast to a common law fraud claim where a plaintiff alleges that a defendant made a material false statement or omission directly to the plaintiff. Under such circumstances, the plaintiff is in a position to plead with the specificity required by Rule 9(b). This Court concludes that despite the use of the word "fraud," a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed. See Nesco Inc. v. Cisco, No. Civ.A. CV205-142, 2005 WL 2493353, *3 (S.D.Ga. Oct. 7, 2005) (finding common law fraud and fraudulent transfer "bear very little relation to each other" since the element of false representation need not be proven in fraudulent transfer cases).

>Given this lack of access to information on the part
>of a plaintiff in a fraudulent transfer case, the
>application of a heightened pleading standard is
>inappropriate.

Although the defendants have identified two FUFTA cases to the contrary (see Doc. 91, pp. 6-7), the majority of Southern District of Florida cases reject the application of heightened pleading requirements in fraudulent transfer cases, and their reasoning is persuasive. See e.g., id.; Steinberg v. A Analyst Ltd., No. 04-60898, 2009 WL 806780 at *12 (S.D. Fla. Mar. 26, 2009); Court-Appointed Receiver for Lancer Mgmt. Grp. LLC v. 169838 Canada, Inc., No. 05-60235-CIV, 2008 WL 2262063 at *2 (S.D. Fla. May 30, 2008); Perlman v. Five Corners Investors I, No. 09-81225-CIV, 2010 WL 962953 at *4 (S.D. Fla. Mar.15, 2010); Steinberg ex rel. Lancer Mgmt. Grp. LLC v. Alpha Fifth Grp., No. 04-60899-CIV, 2010 WL 1332840 at *2 (S.D. Fla. Mar. 30, 2010); Allstate Ins. Co. v. Fed. Sav. Bank, No. 12-60077-CIV, 2012 WL 2953656 at *3 (S.D. Fla. July 19, 2012).

Furthermore, the rationale for rejecting the heightened pleading standard in those fraudulent transfer cases is corroborated by the Eleventh Circuit's discussion in Hill v. Morehouse Med. Associates, Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir., Aug. 15, 2003), where the court stated:

Rule 9(b)'s heightened pleading standard may be applied less stringently...when specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control." United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga. Inc., 755 F. Supp. 1040, 1052 (S.D. Ga.).... United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir.1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed...."). In that instance, the plaintiff may plead based upon information and belief, Epic Healthcare Mgmt. Group, 193 F.3d at 308, provided that she "accompan[ies][her] legal theory with factual allegations that make [her] theoretically viable claim plausible," In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (emphasis omitted) (internal quotation marks omitted); see also Lab. Corp. of Am., 290 F.3d at 1314 n. 25 [11th Cir. 2002] (recognizing that "a more lenient pleading standard" is appropriate under Rule 9(b) when "evidence of fraud [i]s uniquely held by the defendant" provided that "the complaint ... set [s] forth a factual basis for such belief...."

The movants argue that the Eleventh Circuit's holdings in American United Life Ins. Co. v. Martinez, 480 F.3d 1043 (11th Cir. 2007), and U.S. ex rel Adkins v. McInteer, 470 F.3d 1350 (11th Cir. 2006), support the application of a heightened pleading standard (Doc. 63, pp. 6-7; Doc. 91, p. 7). The plaintiffs argue persuasively that these cases are inapposite, as American United Life Ins. Co. v. Martinez, involves a common law fraud claim, and U.S.

ex el Adkins is a qui tam case, both of which are distinguishable because, as indicated, fraudulent transfer claims, like the ones alleged here, are commonly asserted against entities that did not deal directly with the plaintiffs and, therefore, those plaintiffs lack personal knowledge of the details of the alleged fraudulent transfers (Doc. 84, p. 10; Doc. 98, pp. 6-7).

Moreover, other circuit courts of appeals have relaxed Rule 9(b)'s heightened pleading requirements "when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir.1999) (abrogated on other grounds, U.S. ex rel. Eisenstein v. City of New York, New York, 129 S. Ct. 2230 (2009)); see Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992); Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (cautioning awareness to "the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud....Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs"); Corley v. Rosewood Care Ctr., Inc. of Peoria, 142 F.3d 1041, 1051 (7th Cir. 1998); see also Rotella v. Wood, 528 U.S. 549, 560 (2000) (noting in certain circumstances there is flexibility to allow pleadings based on evidence

reasonably anticipated after further investigation or discovery, citing Corley

v. Rosewood Care Center, Inc. of Peoria, supra)).  Thus, as summarized in

Whirlpool Fin. Corp. v. GN Holdings, Inc., 873 F. Supp. 111, 119 (N.D. Ill.

1995), aff'd, 67 F.3d 605 (7th Cir. 1995):

> imposing an obligation on plaintiffs to plead
> information that is only in defendants' hands would
> result in an untenable Catch-22: While plaintiffs
> would be entirely unable to gain access to the
> required facts without discovery, without those facts
> they would be wholly unable to stay in court to
> obtain that discovery.

Accordingly, rejection of the heightened Rule 9(b) pleading

standard is appropriate in this case, as the plaintiffs allege that the details of the

transactions and conveyances at issue are uniquely within the knowledge of the

defendants.  Thus, they assert in the complaint that the alleged fraudulent

transactions were between "insiders" and "without notice to creditors" (Doc.

43-1, ¶¶69, 142).  Further, the plaintiffs allege that the purported scheme is

complex, involving dozens of interrelated companies formed by, and within the

control of the two individual defendants, who engaged in multiple

intercompany transfers allegedly designed to obfuscate their plan to defraud

creditors such as the plaintiffs (see id., ¶¶8, 58, 59, 137).

Nevertheless, the complaint allegations are sufficient to apprise the defendants of the nature of the allegedly fraudulent conduct, and to permit the defendants to either admit or deny the allegations. <u>See</u> 5A Wright & Miller, <u>Federal Practice and Procedure</u>, §1298, p. 236 (the most basic consideration is whether there is adequate notice to enable the party to prepare a responsive pleading).

In sum, the defendants' argument that the FUFTA claim must be dismissed "for lack of specificity pursuant to Fed. R. Civ. Pro 9(b)" (Doc. 63, p. 5) fails because that standard is inapplicable under the circumstances of this case.[5]

Similarly, a heightened pleading standard is appropriately rejected for the successor liability, conspiracy, and aiding and abetting claims. Those claims are premised upon allegations of fraudulent transfers and, therefore, the considerations underlying the pleading standard for the FUFTA claim apply to those claims as well.

---

[5] At the hearing, the defendants attempted to argue  that the complaint fails to meet F. R. Civ. P. 8(a)'s notice pleading standard. However, the defendants did not assert such a contention, or articulate such an argument, in their motion. Therefore, they have forfeited that argument.

The defendants argue specifically that the complaint is deficient because "[t]here is no delineation of particular acts of conspiracy for particular defendants" (Doc. 63, p. 7).    This contention is unavailing because "[e]xceptions to individualizing defendants' roles do exist," such as when the information necessary to individualize the role of multiple defendants is uniquely within the defendants' knowledge. Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 778 n.5 (7th Cir. 1994); see Steinberg v. A Analyst Ltd., No. 04-60898, 2009 WL 806780 at *11 (S.D. Fla. Mar. 26, 2009) (refusing to dismiss a complaint which "lumps together multiple defendants without specification of the nature of the alleged fraud of each" because Rule 9(b)'s heightened pleading requirements do not apply).    Here, the plaintiffs argue that they are not presently able to detail the role of each defendant in the purported scheme because the necessary information is uniquely within the defendants' knowledge.

Notably, however, the plaintiffs allege that, "[a]t the heart of each of the SCI Entities are the [two] Individual Defendants" (Doc. 43-1, ¶58) who allegedly exercise pervasive control over the SCI Entities and the Captive Insurers (id., ¶137).    Therefore, this is not a circumstance where there are dozens of defendants who have no relationship to each other, and no

understanding of the connection alleged between them.  <u>See</u> 5A Wright &

Miller, <u>Federal Practice and Procedure</u> §1298, pp. 234-35 (the relationship of

the parties to the action is relevant to the determination of what constitutes a

sufficient allegation).  Accordingly, the defendants' contention that the

conspiracy, successor liability, and aiding and abetting claims should be

dismissed because they do not meet the heightened pleading standard under

Rule 9(b) is unmeritorious.[6]

C. <u>Transfers from parties who are not judgment debtors</u>

Next, the movants argue that "[o]nly transfers from the judgment

debtors identified in the Verified Complaint can form the basis for a claim" of

fraudulent transfers and, therefore, any allegations of transfers from third

parties who are not one of the four judgment debtors must be stricken (Doc. 63,

pp. 11, 12).  This argument is meritless.

---

[6]As an alternative to dismissal for lack of specificity, the defendants assert that they "are entitled to a more definite statement of plaintiffs' allegations under F.R.Civ.P. 12(e)"(Doc. 63, p. 5).  This contention is wholly undeveloped (<u>see</u> <u>id.</u>), and, therefore, should be rejected.  Furthermore, the request is meritless, because "the motion [for more definite statement] is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail."  <u>Fathom Exploration, LLC</u> v. <u>Unidentified Shipwrecked Vessel or Vessels</u>, 352 F.Supp.2d 1221 (S.D. Ala. 2005) (citation omitted); <u>see also BB In Technology Co.</u> v. <u>JAF, LLC</u>, 242 F.R.D. 632, 640 (S.D. Fla. 2007); <u>S.E.C.</u> v. <u>Digital Lightwave, Inc.</u>, 196 F.R.D. 698, 700 (M.D. Fla. 2000) (touchstone for Rule 12(e) relief is unintelligibility, not lack of detail).

First, the plaintiffs correctly point out that there are nine, not four, judgment debtors named as defendants in this action (Doc. 84, p. 5). Furthermore, FUFTA does not apply exclusively to transfers made by a "judgment debtor."

FUFTA governs transfers made by a debtor that are fraudulent to a creditor. Fla. Stat. 726.105. A "debtor" is defined as "a person who is liable on a claim," Fla. Stat. 726.102(7), and a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Fla. Stat. 726.102(4)(emphasis added). Thus, a "debtor" under FUFTA has broad application, and is not limited to a person against whom a plaintiff has a judgment. Therefore, the defendants' argument is incorrect that, as a matter of law, "transfers made by third parties...are not actionable because no judgment debtor was involved" (Doc. 63, p. 11). Accordingly, this contention is properly rejected.

D. <u>Joint and Several Liability</u>

The defendants argue that joint and several liability, which is a remedy sought by the plaintiffs, is not available under FUFTA (Doc. 63, p. 12). They contend that "[t]he remedies afforded under the Act are (a) avoidance of the transfer, (b) attachment against the asset transferred or other property, or (c) an injunction against further disposition or appointment of a receiver to take charge of the asset" (<u>id</u>., p. 13; <u>see</u> Fla. Stat. 726.108(1)). Thus, the defendants argue that money damages are not available under FUFTA (<u>see</u> <u>id</u>.).

The plaintiffs dispute the defendants' contention, and cite another provision of the statute which authorizes the court to order "[a]ny other relief the circumstances may require," subject to the applicable principles of equity and in accordance with applicable rules of civil procedure.   Fla. Stat. 726.108(c)3 ("catch all provision") (Doc. 84, pp. 16-17). The plaintiffs point out that this statutory provision has been applied to award monetary damages. <u>Hansard Const. Corp.</u> v. <u>Rite Aid of Florida, Inc.</u>, 783 So. 2d 307, 308 (Fla. App. 2001) (request for monetary damages is authorized by the "catchall" provision); <u>see</u> <u>also</u> Fla. Stat. 726.109(2) (authorizing money judgments when the transaction is voidable). Furthermore, this "catch all" provision has been applied to award money damages "against both fraudulent transferor and

-24-

transferee, jointly and severally." <u>McCalla</u> v. <u>E.C. Kenyon Const. Co.</u>, 183 So. 3d 1192, 1194 (Fla. App. 2016). Consequently, there is legal authority supporting the availability of joint and several liability under FUFTA.

The defendants, <u>quoting</u> <u>Freeman</u> v. <u>First Union Nat. Bank</u>, 865 So. 2d 1272, 1277 (Fla. 2004), state that "[n]othing in the language of the Act 'suggests an intent to create an independent tort for damages'" (Doc. 63, p. 13). However, this comment is taken out of context, as it pertains to the rejection of an independent tort for "aiding and abetting of a fraudulent money transfer" <u>Id</u>. The <u>Freeman</u> court added that the catch-all provision is intended to provide relief that "facilitate[s] the use of the other remedies provided in the statute." <u>See</u> <u>id</u>. at 1276. Therefore, <u>Freeman</u> does not foreclose the remedy of money damages, or joint and several liability.

Additionally, the defendants contend that joint and several liability is not available for counts two through five of the complaint because those counts "are premised on the claim of fraudulent transfers, a claim that cannot stand" (Doc. 63, p. 13). However, the fraudulent transfers claim remains. Therefore, the defendants have not asserted a cognizable basis for striking the request for joint and several liability as to the other counts of the complaint.

E. Negligence

The defendants argue that "Count five sounding in negligence should be dismissed" because the "[p]laintiffs have not alleged facts giving rise to a duty of care on the part of any defendants..."(Doc. 63, p. 13).   The plaintiffs contend that the negligence claim satisfies the pleading requirements of Rule 8(a), F.R.Civ.P. (Doc. 84, pp. 17-18).

> [A] cause of action based on negligence comprises four elements: 1. A duty, or obligation, recognized by the law, requiring the [defendants] to conform to a certain standard of conduct, for the protection of others against unreasonable risks. 2. A failure on the [defendants'] part to conform to the standard required: a breach of the duty....3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as the legal cause, or proximate cause, and which includes the notion of cause in fact.  4. Actual loss or damage....

Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003) (quoting Prosser and Keaton on the Law of Torts 164-65 (W. Page Keeton ed., 5th ed.1984)); see also Lamm v. State St. Bank & Trust, 749 F.3d 938, 947 (11th Cir. 2014).

The plaintiffs have not specifically articulated the legal duty that is purported to be created; they have not alleged any facts that would justify the recognition of such a duty; and they have not alleged facts showing how that duty was breached.

However, the negligence count should be dismissed without regard to the deficiencies in the statement of the claim because it is an improper shotgun pleading. Thus, the first paragraph of the count alleges that "Plaintiffs repeats [sic] the allegations of all preceding paragraphs of the Verified Complaint as if set forth at length herein" (Doc. 43-1, p. 31, ¶176). The Eleventh Circuit has regularly condemned such pleadings and directed dismissal of the pleading. See, e.g., LaCroix v. W. Dist. of Kentucky, 627 Fed. Appx. 816, 818 (11th Cir. 2015); Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008).[7]

The negligence count in the complaint states that "Defendants owed a duty of care to Plaintiffs to exercise due care not to harm Plaintiff," and that "Defendants breached their duty as set forth above" (Doc. 43, p. 31).

---

[7]Arguably, counts two, three and four are subject to dismissal for the same reason. However, those are in the nature of derivative claims so that the incorporation of all prior paragraphs might be acceptable. Since the defendants did not challenge those counts as shotgun pleading, any such contention is appropriately deemed abandoned.

Although, as indicated, the plaintiffs have incorporated in the negligence count all prior paragraphs, there is nothing in those allegations that states a legal duty except for the fraudulent transfer statute. A breach of that statute primarily requires a showing of fraud or other intentional conduct. The plaintiffs have not set forth any allegations demonstrating that the statute can be a basis for a claim of negligence.

Except for the fraudulent transfer allegations, there is no specification in the complaint of a legal duty that is owed by the defendants to the plaintiffs. Moreover, there are no facts alleged that would support the creation of a legal duty that could be the basis for a claim of negligence. Also, there are no facts alleged explaining how that duty was breached or which of the numerous defendants breached the duty. In short, the plaintiffs' allegation of negligence is conclusory and should therefore be dismissed.

F. Insurance premiums to Cayman Captives

The defendants also argue that "[a]ny claim for damages arising from the deposit of insurance premiums in...trust accounts to pay claims must be dismissed" (Doc. 63, p. 16) because the plaintiffs' "claim that money held by defendants in the Cayman Islands is an asset of any defendants available to satisfy judgments in the 2036 case is demonstrably false" (id., p. 14). This

argument pertains to the plaintiffs' allegation that the defendants overfunded insurance trust accounts in order "to transfer money away from the SCI Entities...to the detriment of the SCI Entities' creditors, including...[the] Plaintiffs" (see Doc. 43-1, ¶135).

In challenging this contention, the defendants attach to their motion to dismiss the affidavit of defendant John W. Hardin, and a Collateral Trust Agreement (Doc. 63, Exs. 1, A). Hardin avers that the latter is an agreement between Hardin Indemnity II, and Zurich American Insurance Company and its affiliates ("Zurich"), effective from March 2011 to March 2012, concerning payment of claims on workers' compensation policies (Doc. 63, Exs. 1, A). The defendants argue that the Collateral Trust Agreement shows that Zurich, not the captive insurers, "govern[ed] the amounts [deposited in the trust fund], ownership, control, disposition, and authority to spend the [trust] funds" (Doc. 91, p. 4). Therefore, the defendants contend there is no basis for alleging that they fraudulently overfunded the trust account.

The plaintiffs object to consideration of the Hardin affidavit and the Collateral Trust Agreement in connection with the motion to dismiss (Doc.

84, pp. 19-20).[8]  Thus, they dispute the contents and authenticity of this

evidence, and argue that these documents may not be considered because,

pursuant to Rule 12(b)(6), a motion to dismiss may not be supported by, or rely

upon, evidence outside of the pleadings (id.; Doc. 98, p. 4).

> In this regard, the Eleventh Circuit stated that:

> "A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n. 7 (11th Cir. 2006)....Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.

Austin v. Modern Woodman of America, 275 Fed. Appx. 925, 926 (11th Cir.

2008).   However, the court may consider an extrinsic document without

converting the motion to dismiss into a motion for summary judgment if the

document is (1) central to the plaintiff's claim, and (2) its authenticity is not

challenged. Speaker v. U.S. Dep't of Health & Human Servs. Centers for

Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting

---

[8]The plaintiffs amplified their objection to consideration of these documents in a Motion to Strike the Affidavit of John W. Hardin and accompanying exhibits (Doc. 83). Defendant John Hardin opposes this motion (Doc. 91), and the plaintiffs, with leave of court, filed a reply (Doc. 98).

SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010)).

Furthermore, "the court has complete discretion to determine whether or not to accept any material beyond the pleadings." Ware v. Associated Milk Producers, Inc., 614 F.2d 413, 415 (5th Cir. 1980); see Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1531-32 (11th Cir. 1990); Prop. Mgmt. & Investments, Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985). "[T]his discretion generally will be exercised in terms of whether or not the proffered material ... is likely to facilitate the disposition of the action.... When the extra-pleading material is scanty, incomplete, or inconclusive, the court probably will reject it...." Ware v. Associated Milk Producers, Inc., supra, 614 F.2d at 415 (quoting 5 Wright & Miller, Federal Practice and Procedure, § 1366 at p. 675) (citations omitted)).

The movants argue that the court should consider the Collateral Trust Agreement because it "is central to Plaintiffs' claim against Hardin Indemnity II Ltd. and Hardin Indemnity Ltd., and Plaintiffs do not challenge the document's authenticity" (Doc. 91, p. 1). However, the plaintiffs "affirmatively dispute the contents and authenticity of the at-issue extrinsic evidence" (Doc. 98, p. 4). Furthermore, although the Collateral Trust

Agreement is clearly relevant, it is not clearly "central" to the plaintiffs' claims.

Thus, the Collateral Trust Agreement pertains to Hardin Indemnity Ltd. II, and it reflects an agreement for "policy year March 2011 to March 2012" (Doc. 63, Ex. 1, ¶4). The plaintiffs' claims, however, are against three captive insurers, and encompass the time period "[b]eginning in 2011 and continuing through the present day" (Doc. 43-1, ¶131). Therefore, although it is relevant, the captive insurers have not shown that it is "central" to the resolution of the plaintiffs' allegations of wrongdoing against the captive insurers, which span several years.

Furthermore, the court should exercise its discretion to disregard this extrinsic evidence with respect to the motion to dismiss because the movants attribute greater clarity to the Collateral Trust Agreement than is apparent. For example, the defendants argue that the Collateral Trust Agreement refutes the plaintiffs' contention that the defendants overfunded the reserve trust accounts because the Agreement reflects that the beneficiary, i.e., Zurich, and not the captive insurers, dictate the amount of money placed in the trust (Doc. 63, pp. 15-16; Doc. 91, pp. 4-5). However, the beneficiary is to determine the amount placed in the trust based upon "Loss Sensitive

-32-

Agreement(s)" (Doc. 63, Ex. A, §1.1(k)), which "means the Deductible and Paid Loss Retrospective Rating Agreement" (id., §1.1(f)).   That Rating Agreement is not included in the submissions, and it is unknown how the rating is computed, or if the defendants play any role in informing that decision.  Therefore, it cannot be determined on the face of the Collateral Trust Agreement that the captive insurer had no influence in determining the amount of the required trust reserve (and, concomitantly, that a captive insurer was not involved in purportedly overfunding a trust account).[9]

In sum, the authenticity of the extrinsic documents is challenged by the plaintiffs, and the Collateral Trust Agreement does not, on its face, bring the court any closer to resolution of the plaintiffs' contentions against the captive insurers.   Consequently, there is no cogent reason for the court to exercise its discretion to take the unusual step of considering this extrinsic evidence on a motion to dismiss.  See Ware v. Associated Milk Producers, Inc.,

---

[9]Additionally, the defendants assert that the Collateral Trust Agreement shows that Zurich governed "ownership, control, disposition, and authority to spend the [trust] funds" (Doc. 91, p. 4).  However, the captive insurer is not without any control of the trust finds, as the Trust Agreement provides that "[a]ny Cash held in the Required Reserve Account shall be invested...in accordance with instructions furnished by the Grantor [i.e., defendant Hardin Indemnity Ltd. II, and other defendants], and that "[t]he interest accruing and dividends paid thereon and any profit realized from such investments shall be paid to the Grantor or credited to an account of the Grantor..." (Doc. 63, Ex. A, §2.3).

supra, 614 F.2d at 415; see, e.g., Speaker v. U.S. Dep't of Health & Human

Servs. Centers for Disease Control & Prevention, supra, 623 F.3d at 1379-1380

(11th Cir. 2010) (considering extrinsic evidence "to determine whether [the

plaintiff] has alleged sufficient facts to state a claim").

      However, from a procedural standpoint, it appears unnecessary to

"strike" those documents from the record (Doc. 83).  Instead, the extrinsic

evidence has not been considered in connection with the motion to dismiss,

thereby rendering moot the plaintiffs' Motion to Strike the Affidavit of John

W. Hardin and Accompanying Exhibits (Doc. 83).

      The movants also contend that the "[p]laintiffs do not allege how,

under any theory, the money in the captive insurance companies is money that

is due to plaintiffs or that was fraudulently transferred to avoid an obligation"

(Doc. 63, p. 16).  The plaintiffs' theory is that the defendants placed more

money in those trust accounts than was necessary for the benefit of other

insurers in order to "transfer money away from the SCI Entities ... to the

detriment of the SCI Entities' creditors" (Doc. 43-1, p. 25).  The plaintiffs,

furthermore, give examples of deposits that purportedly far exceeded the

expected future deductible obligations on the policies, upon which the reserve

is purportedly to be calculated (id.).  Therefore, accepting these factual

allegations as true, see Bell Atlantic Corp. v. Twombly, supra, 550 U.S. at 555, the plaintiffs have alleged a cognizable claim for fraudulent transfers against the captive insurers.

G. Notice of Joinder with John W. Hardin's Motion to Dismiss

A list of 25 defendants, including Henry C. Hardin, III; Hardin Indemnity, LLC; Hardin Indemnity Ltd.; and the Staffing Concepts companies ("Henry Hardin defendants") gave "Notice of Joinder" with John W. Hardin's Motion to Dismiss the Plaintiffs' Verified Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b) (Doc. 75, p. 2).

This joinder is permissible. See Rule 12(g)(1), F.R.Civ.P. ("A motion under this rule may be joined with any other motion allowed by this rule."). Accordingly, the Henry Hardin defendants have been joined in John W. Hardin's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), which was filed on March 15, 2016, as if they had filed the motion.

On the other hand, their request for consideration of additional extrinsic evidence in connection with that Motion to Dismiss is properly rejected (Doc. 75, p. 3; Ex. A). Notably, the Henry Hardin defendants do not even identify the contents of the 61 pages of documents they attached to the

motion, and they certainly have not shown that this extrinsic evidence is central to the claims against the captive insurers. <u>See</u> <u>Speaker</u> v. <u>U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention</u>, <u>supra</u>, 623 F.3d at 1379. Rather, they merely make a conclusory assertion that these documents should be considered because they "are either central to the Complaint or referenced by the Complaint" (Doc. 75, p. 3). It is unacceptable to expect the court to cull through these documents for information supporting their contention. Accordingly, the documents attached to the Notice of Joinder in John Hardin's Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) (Doc. 75, Ex. A-001 to A-063) are properly disregarded.

H. <u>Motion to Dismiss Under Rule 12(b)(2), F.R.Civ.P.</u>

Defendant Hardin Indemnity Ltd. includes a "Motion for Dismissal Under Rule 12(b)(2)" in the same document as their Notice of Joinder in John Hardin's Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) (Doc. 75, p. 3). Rule 12(b)(2), F.R.Civ.P. is the defense of lack of personal jurisdiction.

This motion is properly denied for two reasons. First, as a matter of procedure, Hardin Indemnity Ltd. may not assert a successive motion to dismiss on the ground of lack of personal jurisdiction. Thus, Rule

-36-

12(g)(2),F.R.Civ.P., cautions that "a party that makes a motion under ... rule [12] must not make another motion under this rule raising a defense or objection [such as a Rule 12(b)(2) defense of lack of personal jurisdiction] that was available to the party but omitted from its earlier motion." Further, the "party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)." Rule 12(h)(1)(A), F.R.Civ.P.

In this case, Hardin Indemnity Ltd. is asserting two motions to dismiss. First, it joined in John W. Hardin's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b) (Doc. 75, p. 2). Second, Hardin Indemnity asserts a Motion for Dismissal Under Rule 12(b)(2) (Doc. 75, p. 3). The second motion to dismiss is impermissible because it raises the defense of lack of personal jurisdiction, which is prohibited in a successive motion to dismiss. See Rule 12(g)(2), F.R.Civ.P.

At the hearing, Hardin Indemnity Ltd. argued that the Motion for Dismissal Under Rule 12(b)(2) is their first motion to dismiss because Hardin Indemnity Ltd. did not join in John W. Hardin's Motion to Dismiss. Thus, Hardin Indemnity's counsel asserted that the joinder was on behalf of other Henry Hardin defendants. This contention is incorrect. The notice of joinder

with John W. Hardin's Rule 12(b)(6) and 9(b) motion was by "[t]hese defendants," which includes "Hardin Indemnity LLC" and "Hardin Indemnity Ltd." (see Doc. 75, p. 2, nos. (2)(3)). Furthermore, Hardin Indemnity sought to have the court consider, in connection with its Rule 12(b)(6) and (9)(b) motion, documents that it claimed were central to the allegations against it (see Doc. 75, p. 3). Thus, Hardin Indemnity Ltd. unquestionably joined in John W. Hardin's Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b), F.R.Civ.P., thereby precluding Hardin Indemnity Ltd.'s successive Motion to Dismiss under Rule 12(b)(2), F.R.Civ.P.

In all events, the motion is substantively deficient because Hardin Indemnity Ltd. challenged only one of two grounds the plaintiffs asserted for personal jurisdiction over them. Therefore, even considering the merits of the motion, Hardin Indemnity has not shown the court lacks personal jurisdiction over it.

Thus, the plaintiffs assert the following grounds for personal jurisdiction over the captive insurers (Doc. 43, p. 11):

> 51. This Court has specific personal jurisdiction over the Captive Insurers because the Captive Insurers are unauthorized insurers operating in the State of Florida which issued certain policies of insurance to other Defendants named in this action

under which Plaintiffs were and are intended beneficiaries. The Captive Insurers are therefore subject to the jurisdiction of the courts of this State, including this court, pursuant to the Unauthorized Insurers Process Law...

52. In addition to the jurisdiction conferred upon this Court by the Unauthorized Insurers Process Law, this Court maintains specific personal jurisdiction over the Captive Insurers because Plaintiffs' claims against the Captive Insurers arise directly from the Captive Insurers' conduct. This conduct includes, but is not limited to, various contacts which the Captive Insurers specifically and intentionally directed towards persons resident in the State of Florida and within the jurisdictional territory of this Court.

Hardin Indemnity Ltd.'s motion to dismiss argues solely that there is a "lack of personal jurisdiction because Plaintiffs are excluded from the class of parties to whom use of Florida's Unauthorized Insurer Process Law (UIPL) is available" (Doc. 75, p. 3; see also id., pp. 6-7 ("Because the UIPL is unavailable to Plaintiffs, they cannot establish that specific personal jurisdiction is vested with this Court.")).

However, as the plaintiffs point out, UIPL is not the sole ground they asserted for personal jurisdiction, and Hardin Indemnity "fails to acknowledge" their contention that "the Cayman Captives' direct consent and actions subject them to Florida's jurisdiction" (Doc. 94, p. 8). In this regard,

the plaintiffs elaborate that "The Cayman Captives have purposefully availed themselves of the protections and jurisdiction of the Florida courts and have expressly consented to such jurisdiction through not only their contractual arrangements with certain defendants, but also Defendant John W. Hardin's acceptance of service on behalf of the Cayman Captives as an 'authorized' representative..." (Doc. 94, pp. 3-4; see id., pp. 11-14).

Therefore, assuming, without deciding, that Hardin Indemnity has argued meritoriously that Florida's Unauthorized Insurer Process Law (UIPL) is inapplicable, the motion fails because it does not mention, and it certainly does not show, that the plaintiffs' second ground for personal jurisdiction is insufficient. See Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (a district court has the discretion to decline to consider an argument that was not first presented to the magistrate judge). Accordingly, I recommend that Hardin Indemnity's Motion to Dismiss under Rule 12(b)(2), F.R.Civ.P. (Doc. 75-2) be denied.

## I. Hardin Indemnity Ltd. II "Notice of Joinder"

Finally, Hardin Indemnity Ltd. II has filed a "Notice of Joinder in Hardin Indemnity Ltd.'s Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (Doc. 88). As the plaintiffs correctly assert (Doc. 93),

Hardin Indemnity Ltd. II may not raise the defense of lack of personal jurisdiction because it is asserted in its second motion to dismiss.

Thus, Hardin Indemnity Ltd. II (and other defendants) filed in March 2016, a Motion to Dismiss the Plaintiffs' Verified Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Doc. 63). Hardin Indemnity Ltd. II could have, but did not, raise a defense of lack of personal jurisdiction in that motion to dismiss. It now requests to join Hardin Indemnity's Motion to Dismiss Under Rule 12(b)(2). However, that would be its second motion to dismiss and, as discussed supra, pp. 36-37, a lack of personal jurisdiction may not be raised in a successive motion to dismiss. Rule 12(g)(2), F.R.Civ.P. Further, by failing to raise that defense in its first motion, Hardin Indemnity Ltd. II has waived that defense. Rule 12(h)(1)(A), F.R. Civ. P. Therefore, Hardin Indemnity Ltd. II may not join in a Motion to Dismiss Under Rule 12(b)(2). Accordingly, its "Notice of Joinder in Hardin Indemnity Ltd.'s Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (Doc. 88) is appropriately denied.

## IV.

For the foregoing reasons, I recommend that the Motion to Dismiss Verified Complaint Pursuant to Federal Rule of Civil Procedure

12(b)(6) and 9(b) (Doc. 63) be granted to the extent that the negligence claim

be dismissed, and denied in all other respects.  Further, I recommend that the

"Defendants' Notice of Joinder in John W. Hardin's Motion to Dismiss" (Doc.

75-1) be granted, but that Hardin Indemnity's "Motion to Dismiss Under

Federal Rule of Civil Procedure 12(b)(2)" (Doc. 75-2) be denied.  Finally, I

recommend that the "Motion to Strike the Affidavit of John W. Hardin,

Accompanying Exhibits, and the Arguments Which Rely Upon Them, Included

in the Defendants' Motion to Dismiss" (S-83) be denied as moot; and  Hardin

Indemnity Ltd. II's "Notice of Joinder in Hardin Indemnity Ltd.'s Motion to

Dismiss Under Federal Rule of Civil Procedure 12(b)(2)" (Doc. 88) be denied.

           Respectfully submitted,

                         THOMAS G. WILSON
               UNITED STATES MAGISTRATE JUDGE

DATED: DECEMBER _5_ , 2016

## NOTICE TO PARTIES

       A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.