UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CONTINENTAL CASUALTY CO.,
*ET AL.*,                                    :
                                             :
          Plaintiffs,                        :
                                             :
v.                                           :   CASE NO. 8:16-CV-322-17TGW
                                             :
JOHN W. HARDIN, *ET AL.*,                    :
                                             :
          Defendants.                        :

---

## REPORT AND RECOMMENDATION

This cause came on to be heard upon John W. Hardin's Motion for an Award of Costs and Fees Pursuant to Fed. R. Civ. Pro. 65(c) (Doc. 100).[1] The motion was referred to me for a report and recommendation (Doc. 104). After reviewing the memoranda, the parties' exhibits, and conducting oral argument on the motion, I recommend that the motion be denied because the movants fail to establish that Rule 65(c) is a cognizable basis for recovery of their attorney's fees and expenses.

---

[1] This motion is filed on behalf of defendants John W. Hardin, Hardin Indemnity II Ltd., People, Inc., Leasing Resources of America 2, Inc., Leasing Resources of America 3, Inc., Leasing Resources of America 4, Inc., Cohesive Networks, Inc., and Cohesive Networks 2, Inc. (Doc. 100, p. 1). They are referred to herein as "the JH defendants."

I.

The plaintiffs allege that the defendants engaged in fraudulent transfers in order to avoid satisfying multi-million dollar judgments entered in favor of the plaintiffs and against certain defendants (see Doc. 1).   The plaintiffs filed on February 10, 2016, a Motion for Temporary Restraining Order and Preliminary Injunction, seeking, among other relief, to freeze all assets, including a prohibition against the transfer of any assets (Doc. 2, p. 3).

On February 11, 2016, the court granted in part the motion for a Temporary Restraining Order (TRO) (Doc. 4).   As pertinent here, the TRO enjoined the defendants "from transferring assets outside of the ordinary course of business," and specified that "ordinary course transfers [may] not exceed $250,000 per transfer or $1,000,000 in the aggregate" (id., p. 12).   The court also scheduled a hearing on the motion (id., p. 13).   The court ordered that the TRO would become effective upon the plaintiffs posting of a $100,000 injunction bond, and stay in effect for 14 days thereafter (id., p. 12).

On February 17, 2016, the plaintiffs posted the bond as required by the TRO (Doc. 39).   On February 22, 2016, Thomas Cushing, counsel for the JH defendants, notified the court in correspondence that "the limits set forth in ... [the TRO] ... do not reflect the size of routine, 'ordinary course transfers' to contractual counterparties and others for my clients" (Doc. 100-7).   Cushing advised that, consequently, the JH defendants would be making

2

payments in excess of the limits stated in the TRO in order to fulfill their obligations to the IRS and their clients (id.). Cushing also informed the court that he would attend the court hearing "to contest the plaintiffs' motion for temporary restraining order and preliminary injunction" (id.).

On February 24, 2016, the court held a hearing on the TRO (Doc. 51). The court focused upon its authority to restrict the defendants' use of their assets, and the proper amount of the bond (see id.).

During that hearing, Cushing stated that the transactional monetary limits in the TRO did not satisfy his clients' business needs (id., pp. 46-48). The court continued the TRO in effect until the hearing scheduled for the following week. The court added, however, that it had no objection to the parties stipulating to an increase in the amount of funds that the defendants could transfer in order to meet their customary business obligations (id., pp. 49-50).

On February 25, 2016, defense counsel sent correspondence to plaintiffs' counsel, requesting them to withdraw the motion for temporary restraining order or, alternatively, to "agree to a modification of the [TRO] to allow my clients to meet their financial obligations to their clients ... governments, and to employees" (Doc. 100-8, p. 1). Plaintiffs' counsel stated that he was amenable to the latter request, and the parties agreed to a

3

modification of the TRO to permit the JH defendants to make certain payments that exceeded the limits of the TRO (see Doc. 100-9, 100-10).

On February 29, 2016, the court held a second hearing on the TRO (see Doc. 100-12). Also pending before the court were the defendants' Motion to Dissolve the Temporary Restraining Order (Doc. 56), and the plaintiffs' brief in further support of their Motion for a Preliminary Injunction (Doc. 52; see Doc. 100-12, p. 84). At the hearing, the defendants argued that the plaintiffs' claims are for money damages and, therefore, this is an action at law for which there is no judicial authority to freeze or restrict a defendant's assets before judgment (see Doc. 64, pp. 36, 37). The plaintiffs contended that they were seeking the equitable remedy of restitution and, consequently, the court has the authority to enjoin use of assets in a preliminary injunction without it amounting to an prejudgment attachment of assets (see id., pp. 30-32, 74).

At the close of the hearing, the court issued an Order Granting, in Part, and Denying in Part, the defendants' Motion to Dissolve Temporary Restraining Order (Doc. 59). It stated that, "[h]aving reviewed the motions, heard the arguments of counsel, and for the reasons stated in open Court," the Motion to Dissolve is granted, except with respect to the defendants' obligation to preserve all potentially relevant evidence and electronically

stored information (id.).[2] The Court expressly stated that the TRO is dissolved as to the asset freeze (id.).

John W. Hardin subsequently filed this Motion for an Award of Costs and Fees Pursuant to Fed.R.Civ.Pro. 65(c) (Doc. 100). The JH defendants request an attorney's fees award of $7,462.50, and expenses of $1,076.40, incurred as a result of the "wrongfully entered restraining order of February 11, 2016" (Doc. 100; Doc. 100-1).[3] The attorney's fees relate primarily to defense counsel's attendance at the two court hearings and his efforts to modify the TRO's limits on monetary transactions (see Doc. 100-1, ¶¶2a-2e). The JH defendants also seek reimbursement for counsel's airline flights to attend the hearings (id., ¶4).

The plaintiffs oppose this motion (Doc. 102). They dispute that the defendants were wrongfully enjoined, and argue that the defendants' attorney's fees and expenses are not recoverable under this Rule (id., p. 4). Oral argument was conducted on the motion (see Doc. 172).

---

[2]Correspondingly, the court denied the plaintiffs' Motion for Preliminary Injunction, except for the requirement that the defendants preserve all potentially relevant evidence and electronically stored information (Doc. 59).

[3]The attorney's fees comprise 19.9 hours of work at Thomas Cushing's hourly rate of $375 (Doc. 100-1, p. 4).

## II.

As indicated, the JH defendants seek an award of attorney's fees and expenses pursuant to Rule 65 ( c), F.R.Civ.P., which provides, in pertinent part:

> (c) Security.  The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained....

In this regard, the movant "must prove that it was wrongfully enjoined and that its damages were proximately caused by the erroneously issued injunction." Milan Exp., Inc. v. Averitt Exp., Inc., 254 F.3d 966, 981 (11th Cir. 2001).  There is a presumption in favor of awarding damages on an injunction bond when an injunction is wrongfully entered.  See id.

A.  The plaintiffs dispute that the JH defendants were wrongfully enjoined from unencumbered use of their assets (Doc. 102, pp. 7-8).  "The focus of the 'wrongfulness' inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990).

The JH defendants argue that they were wrongfully enjoined because the case law they presented to the court during the TRO hearing "made

clear that Plaintiffs had asked the Court to exercise injunctive authority that it did not possess," after which the court dissolved the TRO (Doc. 100, p. 3). The plaintiffs respond that, "[t]here was no ruling by this Court that the JH defendants were wrongfully enjoined," and a "TRO which is dissolved in favor of a modified preliminary injunction does not in and of itself equal a finding that a party was wrongfully enjoined" (Doc. 102, pp. 7, 8).

At the hearing on this motion, the JH defendants argued that it is implicit in the court's dissolution of the TRO that the TRO was wrongfully entered. However, the plaintiffs refused to concede at oral argument that the defendants were wrongfully enjoined.

It is not clear from the Order dissolving the TRO, or the transcript of the hearing, the court's reasoning for its decision. However, it is not necessary to resolve this issue because, <u>assuming arguendo</u>, that the JH defendants were wrongfully enjoined, their attorney's fees and expenses are not recoverable under Rule 65(c), F.R.Civ. P.

B. As indicated, Rule 65(c), F.R.Civ.P., permits recovery of "costs and damages" sustained by a party found to have been wrongfully enjoined or restrained. However, the JH defendants are requesting under this rule reimbursement of their attorney's fees and expenses.

Pursuant to "the American Rule, attorneys' fees are unavailable to a prevailing party in the absence of certain common law and statutory

7

exceptions or a contractual provision." Crowley American Transp., Inc. v. Richard Sewing Machine Co., 172 F.3d 781, 785 (11th Cir. 1999); see also Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257 (1975).

      Consistent with this Rule, this court has stated that, "[d]efendants are not entitled to attorneys' fees if it is later determined that Defendants have been wrongfully enjoined." Johnston v. Tampa Sports Authority, No. 8:05CV2191T-27MAP, 2006 WL 2970431 at *1 (M.D. Fla. Oct. 16, 2006); see also Cont'l Grp., Inc. v. KW Prop. Mgmt., LLC, No. 09-60202-CV, 2009 WL 3644475, at *7 (S.D. Fla. Oct. 30, 2009) (the Court does not include attorney's fees when determining the amount for the security bond because they are not recoverable under Rule 65(c)).

      Several federal courts of appeals also hold that attorney's fees are not recoverable as damages in an action on an injunction bond. Matek v. Murat, 862 F.2d 720, 734 (9th Cir. 1988), abrogated on other grounds, Koch v. Hankins, 928 F.2d 1471 (9th Cir. 1991); Minnesota Power & Light Co. v. Hockett, 14 Fed. Appx. 703, 706 (7th Cir. 2001) ("the Seventh Circuit has determined that, for purposes of Fed.R.Civ.P. 65(c), 'costs and damages' do not include attorneys' fees"); Fireman's Fund Ins. Co. v. S. E. K. Const. Co., 436 F.2d 1345, 1352 (10th Cir. 1971) (under Rule 65, attorneys' fees are not recoverable); cf. Tullock v. Mulvane, 184 U.S. 497, 511 (1902) (the master and

the court erred in allowing counsel fees as a part of the damages covered by the bonds).

Significantly, the JH defendants do not cite caselaw from the Eleventh Circuit, or this court, supporting the contention that their attorney's fees and expenses are compensable under Rule 65( c).

The JH defendants argue that "they incurred attorneys' fees and expenses attempting to comply with the restrictions imposed by the order," which are compensable under Nokia Corp. v. Interdigital, Inc., 645 F.3d 553, 560 (2d Cir. 2011) (Doc. 100, pp. 3, 4). The plaintiffs respond, correctly, that Nokia is not controlling authority, and that Nokia is factually inapposite to this dispute (Doc. 102, p. 6).

Plaintiff Nokia filed suit to compel defendant InterDigital, who had filed a complaint against Nokia for patent infringement before the United States International Trade Commission (ITC), to stay InterDigital's ITC proceedings against it, and to arbitrate the dispute.   645 F.3d 553.  The court granted Nokia's motion for a preliminary injunction and ordered InterDigital to stay, or terminate, the ITC proceedings against Nokia; and to arbitrate the infringement claim with Nokia. Id. at 555. "During the period when the preliminary injunction was in place...InterDigital undertook to comply with it. Nokia initiated arbitration proceedings with InterDigital, and InterDigital discontinued the ITC proceedings against Nokia..." Id. at 556.

9

The injunction was subsequently vacated, after which InterDigital sought to recover its attorneys' fees incurred in moving to stay the ITC proceedings and preparing to arbitrate with Nokia. Id. The Nokia court found InterDigital's attorney's fees were recoverable, distinguishing that circumstance from the "long ... established [rule] that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction." Id. at 560. The Nokia court stated:

> InterDigital does not seek to recover attorneys' fees or legal expenses that it incurred in litigating the injunction. Instead, it seeks to recover fees and expenses that it incurred in complying with the injunction. Recovery of such costs, incurred in collateral proceedings required by the terms of a wrongful injunction, does not contravene the American rule or its Rule 65( c) analogue.

The defendants argue that, analogous to Nokia, "they incurred attorneys' fees and expenses attempting to comply with the restrictions imposed by the [temporary restraining] order" (Doc. 100, p. 4). In this regard, Thomas Cushing, counsel for the JH defendants, avers that reimbursement is sought for (Doc. 100-1, ¶2):

> [attorney] services that were directed at compliance with the order limiting the amounts of money my clients could spend in the normal course of business, seeking modification of those terms to enable continued compliance with the order, and communicating and negotiating with counsel for the

10

> Plaintiffs to seek a modification of those terms so my clients could comply with the order and meet their obligations to their clients and remain in business....

This circumstance is inapposite to Nokia because counsel's efforts in this case concerned litigating the terms of the TRO, not litigating a collateral proceeding.[4] Notably, the majority of counsel's time concerns travel to, and attending, the TRO hearings (see Doc. 100-1, ¶2d, e (12 hours)), at which the parties litigated the propriety of restricting the defendants' asset transfers. Thus, the JH defendants' position from the start was that the TRO's asset restriction was wrongful, and counsel stated to the court that he planned "to contest the plaintiffs' motion for temporary restraining order and preliminary injunction" at the hearing (Doc. 100-7). Fees incurred in litigating the injunction are not compensable, even under Nokia. See Nokia, 645 F.3d at 560

---

[4]In summary, the JH defendants seek reimbursement for the following:
Doc. 100-1, ¶2a: fees incurred in counseling the defendants and notifying the court that some of the defendants' monetary transactions made in the ordinary course of business violate the terms of the TRO.
Doc. 100-1, ¶2b: fees incurred in seeking modification of the TRO's terms concerning the limits on monetary transactions.
Doc. 100-1, ¶2c: fees incurred in communicating with opposing counsel to agree to a modification of the TRO (see Doc. 100-8, 100-9).
Doc. 100-1, ¶2d: fees incurred in traveling to, and attending the February 24, 2016, hearing. Counsel also prepared an affidavit in support of the "modification of the restrictions in the February 11 order limiting amounts clients could pay out."
Doc. 100-1, ¶2e: Time spent traveling to, and attending the February 29, 2016, court hearing on the TRO, at which time the court granted, in part, the defendants' Motion to Dissolve the TRO.
Doc. 100-1, ¶4: seeking reimbursement for the airline flights to attend the TRO hearings.

(acknowledging the "long...established [rule] that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction").

Specifically, during the first TRO hearing the court raised the issue of whether, pursuant to <u>Mitsubishi Int'l Corp.</u> v. <u>Cardinal Textile Sales, Inc.</u>, 14 F.3d 1507 (11th Cir. 1994), restricting the defendants' asset transfers was equivalent to a prejudgment writ of attachment (<u>see</u> Doc. 51, pp. 12-17). The second hearing was a "continuation of the [first] TRO hearing" (<u>id.</u>, p. 41) at which the court considered whether that restriction was a permissible exercise of its equitable authority, or constituted a prejudgment writ of attachment (<u>see</u> Doc. 64, pp. 30-32, 36-39). In this regard, the JH defendants state that they presented to the court "case law [that] made clear that Plaintiffs had asked the Court to exercise injunctive authority that it did not possess" (Doc. 100, p. 3). Moreover, counsel's efforts at the second hearing ultimately resulted essentially in the vacation of the TRO (<u>see</u> Doc. 100-4). Therefore, counsel's efforts clearly constitute litigation of the injunction.[5]

In sum, the plaintiffs argue correctly that "the attorneys' fees being sought ... a[re] primarily for their efforts to alter or challenge the TRO"

---

[5]Underscoring the factual dissimilarities between this matter and <u>Nokia</u> is the absence of collateral proceedings in this case.  <u>See</u> <u>Nokia</u>, <u>supra</u>, 645 F.3d at 560 (awarding attorneys' fees "incurred in collateral proceedings required by the terms of a wrongful injunction").

(Doc. 102, p. 13). As such, the requested attorney's fees and expenses are not compensable.  See Johnston v. Tampa Sports Authority, supra, 2006 WL 2970431 at *1. I therefore recommend that John W. Hardin's Motion for an Award of Costs and Fees Pursuant to Fed. R. Civ. Pro. 65(c) (Doc. 100) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MARCH 14, 2017

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.